TOBY VECE *v.* THE MEDICAL CENTER, INC.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued April 4—decided May 29, 1962

*Jack Stock,* for the appellant (plaintiff).

*Charles R. Covert,* for the appellee (defendant).

SHEA, J. The plaintiff brought this action to recover a balance claimed to be due for services rendered as an architect under a written contract. The defendant admitted the execution of the contract but denied any indebtedness under it. By way of special defense, the defendant alleged that the plaintiff's services were not done in accordance with

the agreement, that they were done improperly and after an unreasonable delay and that the plaintiff had agreed to reduce his claim for services if the project was abandoned. In a counterclaim, the defendant repeated, in substance, the allegations of its special defense and claimed damages from the plaintiff. The court rendered judgment for the defendant on the complaint and for the plaintiff on the counterclaim. The plaintiff appealed, claiming that the court erred in finding certain facts without evidence, in refusing to find certain facts which are admitted or undisputed, in reaching certain conclusions when the subordinate facts do not support them and in overruling certain claims of law.

The court found the following facts: The defendant corporation was organized to erect a building to provide offices for persons engaged in the practice of medicine, dentistry and kindred professions in the metropolitan area of Bridgeport. On July 15, 1955, the plaintiff and the defendant entered into a contract in which the plaintiff was designated as the architect responsible, among other things, for the completion of plans and specifications based on preliminary drawings prepared by another architect who specialized in projects of this type. The contract required the plaintiff to supply all mechanical, electrical, structural and site consultants for the other architect during the preparation of the preliminary drawings. Difficulties arose because of the failure of the plaintiff to cooperate with the other architect, and in January, 1956, a meeting was called to correct the situation. At that time, the plaintiff agreed to complete the plans within a maximum of four months after receiving final instructions. These instructions were given in writing in February, 1956. The preliminary plans, as finally

agreed upon, provided for a five-story building with a basement. The plaintiff, using these preliminary drawings, began preparations of the final plans and specifications pursuant to the contract. Progress on the overall project was materially delayed, because some of the prospective tenants submitted revisions of their requirements for office space while the building plans were being prepared. By September 6, 1956, the plaintiff had prepared plans which were complete only as to two floors of the five floors contemplated. Up to that date, the plaintiff had not supplied the defendant with completed specifications. During October, 1956, and on occasions prior thereto, the defendant requested the plaintiff to furnish estimates of the cost of the project. The defendant emphasized the necessity of including in these estimates the cost of certain structural minimums for each of the rental units, including stores on the first floor and offices on the remaining floors. In November, 1956, the plaintiff secured estimates, but the plans on which the estimates were based showed only the first two floors completed and did not show the structural minimums for the remaining floors. Through no fault of the plaintiff, the defendant was unable to obtain the funds necessary to construct the building. The contract fixed a maximum fee of $45,000 for the plaintiff's services.

On these facts, the court concluded that the plaintiff had performed his contractual obligations to the point of submitting partial plans for the proposed medical center, that in all other essentials the plaintiff had failed to perform his contract, that the plaintiff could not recover since he had failed to substantially perform his obligations under the contract and that he had failed to offer

any factual basis for a right of recovery for part performance of more than the sum of $8000 already received by him. The court also concluded that the defendant could not recover on its counterclaim, because the cancelation of the work was wholly attributable to the defendant's lack of ability to finance the project.

The plaintiff has attacked the conclusion of the court that he failed to perform his contract in certain essentials. From the contract, it clearly appears that the plaintiff was under a duty to perform many specified obligations, in addition to those stated in the finding. In view of the manifold obligations imposed on the plaintiff under the contract and the silence of the finding concerning them, it is impossible to determine which, if any, of the essentials the plaintiff failed to fulfil. The plaintiff has attacked the conclusion that he could not recover on the contract since he had failed substantially to perform his obligations under it. The question raised by the pleadings was whether the plaintiff was entitled to any compensation in addition to that already received. The contract makes specific provision for the contingency which occurred in this case. The total sum fixed for the plaintiff's services was to be used as a guide in the determination of what amount, if any, the plaintiff should receive if the defendant abandoned the project. The issues framed by the pleadings, together with the evidence adduced at the trial, presented this problem for determination. Its answer may be found in the language of the contract itself when applied to such of the facts as are outlined in the finding.

The plaintiff has also attacked the conclusion that he failed to offer any factual basis for a right of

recovery for part performance of more than the $8000 already paid. If this statement has any place in the finding, it should be set out as a subordinate fact rather than as a conclusion. Certainly, it is not a deduction from other facts which have been found. Maltbie, Conn. App. Proc. §§ 139, 140. Moreover, it is open to successful challenge, since it appears to be undisputed that the plaintiff did offer evidence to the effect that he had performed 90 percent of the work called for by his contract and that the work necessary to complete the plans and specifications covering the unrented space in the building would amount to approximately 10 percent of the entire work to be performed by him. The obvious purpose of this evidence was to furnish a basis for the court to compute the balance, if any, which might be due the plaintiff. By the terms of the contract, the plaintiff was entitled to just and equitable compensation for work necessarily and satisfactorily performed pursuant to the terms of the contract prior to its abandonment. The court found that the abandonment of the project was not due to any fault on the part of the plaintiff. Accordingly, it is necessary to look to the contract to determine his compensation under it. Nowhere in the finding does it appear that the court resorted to the contract for this purpose. The conclusions under attack are not supported by the subordinate facts. Consequently, they cannot stand. No appeal was taken from the judgment on the counterclaim.

There is error only as to the judgment on the complaint, the judgment on the complaint is set aside and the case is remanded for a new trial of the issues framed on the complaint.

In this opinion the other judges concurred.